**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TIMOTHY D. THOMAS,

*Plaintiff*,

v.

TIMOTHY D. SCHAEFFER, in his official capacity as Executive Director of the Pennsylvania Fish and Boat Commission, and TY C. MOON, in his official capacity as Waterways Conservation Officer of the Pennsylvania Fish and Boat Commission,

*Defendants*.

Case No. 3:24-cv-1603

(Judge Joseph F. Saporito, Jr.)

ELECTRONICALLY FILED

# PLAINTIFF'S SUPPLEMENTAL BRIEF AS TO MOOTNESS

# TABLE OF CONTENTS

**Page**


Table of Authorities ........ iii

Introduction ........ 1

Statement of Facts ........ 3

Question Presented ........ 4

Argument ........ 4

I. This Court can still grant Tim the exact relief he seeks. ........ 5

II. Defendants' voluntary cessation cannot moot this case. ........ 8

III. If anything, *Punxsutawney* reaffirms that it is the job of the courts—not the executive branch—to interpret statutes. ........ 15

Conclusion ........ 16

Certificate of Service ........ 17

Certificate of Word Count ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*California v. Ciraolo*,
476 U.S. 207 (1986) .......... 8

*Collins v. Virginia*,
584 U.S. 586 (2018) .......... 8

*Est. of Smith v. Marasco*,
430 F.3d 140 (3d Cir. 2005) .......... 8

*FBI v. Fikre*,
601 U.S. 234 (2024) .......... 9

*Florida v. Jardines*,
569 U.S. 1 (2013) .......... 7–8

*Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*,
832 F.3d 469 (3d Cir. 2016) .......... 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 2, 9–11, 13

*Hartnett v. Pa. State Educ. Ass'n*,
963 F.3d 301 (3d Cir. 2020) .......... 9

*In re Price*,
370 F.3d 362 (3d Cir. 2004) .......... 12

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
598 U.S. 288 (2023) .......... 5

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) .......... 10, 13

*Punxsutawney Hunting Club, Inc. v. Pa. Game Comm'n*,
____ A.3d ____, 2026 WL 2111761 (Pa. July 21, 2026) ................................ *passim*

*Road-Con, Inc. v. City of Philadelphia*,
120 F.4th 346 (3d Cir. 2024) ................................................................ 2, 9–12, 14

*West Virginia v. B.P.J. ex rel. Jackson*,
146 S. Ct. 2356 (2026) ........................................................................... 13

**Statutes**

30 Pa. C.S. § 901(a)(7) ......................................................................... *passim*

34 Pa. C.S. § 901(a)(2) ......................................................................... 3, 6

34 Pa. C.S. § 303(c) .............................................................................. 3, 6

**Other Authorities**

Deborah Weisberg, *Agencies coming to grips with open fields decision*, Outdoor News
(Aug. 7, 2026) .......................................................................................... 1, 11

## INTRODUCTION

In *Punxsutawney Hunting Club, Inc. v. Pennsylvania Game Commission*, ___ A.3d ___, 2026 WL 2111761 (Pa. July 21, 2026), the Pennsylvania Supreme Court rejected the federal open fields doctrine under the Pennsylvania Constitution. When asked about the decision a few weeks later, a Pennsylvania Fish and Boat Commission Board Member told a reporter that *Punxsutawney* "won't fundamentally change how our [Waterways Conservation Officers] do their job." Deborah Weisberg, *Agencies coming to grips with open fields decision*, Outdoor News (Aug. 7, 2026) (attached as Exhibit 1).

If *Punxsutawney* will not change how WCOs do their job, it cannot moot Plaintiff Tim Thomas's as-applied Fourth Amendment challenge to 30 Pa. C.S. § 901(a)(7). Indeed, a side-by-side comparison of the two cases shows that they have very little in common. Each case deals with warrantless searches allowed by Pennsylvania statutes, but the similarities end there. *Punxsutawney* is a state-law case—brought under the Pennsylvania Constitution—about open fields. But WCO Ty C. Moon's warrantless searches at Tim's property did not take place in an open field. They took place in Tim's curtilage, right next to his cabin. It is therefore unsurprising that Defendants did not raise the open fields doctrine to defend the constitutionality of Moon's searches under the Fourth Amendment. What is

surprising, however, is that Defendants now suggest *Punxsutawney* precludes this Court from reaching the merits of Tim's claim.

In short, *Punxsutawney* considered claims under a *different* constitution, challenging *different* Pennsylvania laws, against *different* defendants. It invalidated an inapplicable state-law defense that Defendants do not even raise. As a matter of law, *Punxsutawney* is simply irrelevant to the federal issues presented here. That means there are only two ways that *Punxsutawney* could moot this case. First, this case would be moot if the Pennsylvania legislature responded to the decision by repealing (or significantly amending) Section 901(a)(7). The Commonwealth has not done so. Second, this case *might* be moot if Defendants adopted binding, official policies that made it "*absolutely clear*" that Tim will not suffer warrantless curtilage searches in the future. *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 357 (3d Cir. 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Defendants have not done so.

Instead, Defendants claim that searches like Moon's are "***less*** likely" after *Punxsutawney*. Doc. 58 at 3–4. But that unsupported representation is a far cry from the sort of evidence required to moot a case. This Court should therefore rule that this case remains justiciable, reach the merits of Tim's Fourth Amendment claim,

and enjoin Defendants from using Section 901(a)(7) to search his curtilage without a warrant or his consent in the future.

## STATEMENT OF FACTS

The parties finished briefing cross motions for summary judgment on July 6. About two weeks later, the Pennsylvania Supreme Court decided *Punxsutawney*, a state constitutional challenge invalidating two Pennsylvania statutes that allowed the Commonwealth's game wardens to search property owners' open fields—but not their curtilage—without a warrant. *See* 2026 WL 2111761, at *36. The court began by explaining that, as written, these statutes (34 Pa. C.S. §§ 303(c) and 901(a)(2)) "unquestionably permit" game wardens "to enter private land, posted or otherwise, outside of buildings and curtilage without a warrant to inspect for violations of the [Game and Wildlife] Code."[1] 2026 WL 2111761, at *36.

After explaining that the text of the statutes allowed game wardens to search open fields without a warrant, the court invalidated those statutes facially under Article I, Section 8, of the Pennsylvania Constitution. *Id.* at *37. With this move, the court rejected the federal open fields doctrine as a matter of state law—at least when

[1] Unlike the laws struck down in *Punxsutawney*, Section 901(a)(7) contains no carveout for curtilage. By its terms, it allows WCOs to enter *any* private land without a warrant to search for violations of Title 30.

the property owner has taken "sufficient steps to exclude intruders" from rural land. *Id.* at *37 & n.24.

Defendants filed a Notice of Supplemental Authority regarding *Punxsutawney* on August 3, contending that the case weakened Tim's standing. *See generally* Doc. 58. According to Defendants, *Punxsutawney*—a case about state open fields doctrine—makes it "***less*** likely" that a WCO will conduct an unconstitutional search of Tim's curtilage under Section 901(a)(7) in the future. *Id.* at 3–4. Four days later, this Court ordered the parties to submit supplemental briefs on whether *Punxsutawney* renders this case moot.

## QUESTION PRESENTED

1. Does the Pennsylvania Supreme Court's decision in *Punxsutawney Hunting Club, Inc. v. Pennsylvania Game Commission* moot this case?

## ARGUMENT

Tim's claims for declaratory and injunctive relief remain justiciable for two reasons. First, nothing about *Punxsutawney*—a case evaluating the constitutionality of different state statutes under a different constitution—prevents this Court from enjoining Defendants' use of 30 Pa. C.S. § 901(a)(7) to violate Tim's Fourth Amendment rights. To the contrary: Absent a judgment that protects those rights, Tim faces the continued threat of unconstitutional searches. That's because the

searches Defendants conducted at his cabin were *already* illegal under black-letter federal law. So even if the open fields doctrine were relevant to this case (and it is not), there is no reason to think that new state-law precedent will rein in Defendants' unconstitutional searches where equally clear federal precedent has made no difference.

Second, Defendants cannot render this case moot by merely suggesting that future unconstitutional searches will be "***less*** likely" after *Punxsutawney*. Doc. 58 at 3–4. This voluntary cessation argument fails because Defendants have taken no binding steps to ensure that similar searches will not recur. In fact, Defendants' arguments and statements to the public suggest that the Commission plans to continue conducting searches like those at issue here. Absent a change to Section 901(a)(7) itself—or the adoption of binding, official Commission policy that will ensure Tim's rights are respected—this case remains live.

## I. This Court can still grant Tim the exact relief he seeks.

As the Supreme Court has explained, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (cleaned up). Relief is possible here. Because *Punxsutawney* speaks only to an

irrelevant state-law defense that Defendants never raised, it cannot preclude this Court from granting Tim the relief he seeks under federal law.

Tim has shown that Section 901(a)(7) acts as an unconstitutional general warrant that allows Defendants (and their successors) to enter the curtilage of his property to search for evidence of crimes. *See* Doc. 46-1 at 12–19. Defendants have already used this statute to search Tim's curtilage without a warrant twice. *See id.* To ensure that he is not subjected to future unconstitutional searches, Tim requests a declaration that Section 901(a)(7) is unconstitutional as applied to him and an injunction that bars Defendants from using the statute to enter his curtilage without a warrant or his consent moving forward. *See id.* at 19–24.

*Punxsutawney* addressed none of these issues. Instead, it held that two *other* provisions of the Pennsylvania Code (34 Pa. C.S. §§ 303(c) and 901(a)(2)) were facially unconstitutional under the *Pennsylvania* Constitution because they allowed the Commonwealth's game wardens to trespass on *open fields* without a warrant. *Punxsutawney*, 2026 WL 2111761, at *37. In reaching this conclusion, the Pennsylvania Supreme Court rejected federal open fields doctrine as a matter of state constitutional law. *Id.* It did not, however, decide whether 30 Pa. C.S. § 901(a)(7) (or any other law) complies with longstanding Fourth Amendment doctrine prohibiting warrantless searches of curtilage. It didn't need to. Unlike Section 901(a)(7), the two

statutes struck down in *Punxsutawney* expressly prohibited game wardens from searching curtilage without a warrant. *See* 2026 WL 2111761, at *7–8, *36.

*Punxsutawney* cannot moot this case because it is not relevant to this case. *Punxsutawney* is about open fields doctrine—a doctrine that is so inapplicable here (even under federal law) that Defendants declined to raise it to justify Moon's warrantless searches. Indeed, Defendants do not dispute that Moon entered Tim's curtilage, and they decline to defend Moon's searches on the merits *at all*.[2] Because *Punxsutawney* only addresses an irrelevant state-law defense that Defendants never raised, it cannot moot this federal-law case.

Even if *Punxsutawney* were relevant here (and it is not), Tim's case only exists because the Commission is willing to ignore black-letter constitutional law. Tim has shown that the Commission uses Section 901(a)(7) to conduct warrantless searches of curtilage that were *already unconstitutional* under the U.S. Constitution. *See* Doc. 46-1 at 12–19. Even under federal law—which still recognizes the open fields doctrine—searches like Moon's are prohibited. *See, e.g.*, *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *Collins v. Virginia*, 584 U.S. 586, 593–94 (2018); *California v. Ciraolo*,

[2] Although Defendants decline to defend Moon's searches on the merits, they have also failed to change the policies that authorize those searches, take concrete steps to ensure that they will not recur, or even squarely admit that they were illegal. These failures further counsel against mootness. *See* Part II, *infra*.

476 U.S. 207, 212–13 (1986); *Est. of Smith v. Marasco*, 430 F.3d 140, 157–58 (3d Cir. 2005). Defendants were happy to violate this on-point federal precedent. There is no reason to think they would be unwilling to take actions that *may* conflict with not-on-point state precedent.

Despite the surface-level similarities, *Punxsutawney*—a case from a different court, involving different parties, and invalidating an inapplicable doctrine under a different constitution—has no bearing on the federal claims and defenses raised here. Moon's searches were always unconstitutional as a matter of federal law. Tim wants these searches to stop. Yet Section 901(a)(7) continues to allow them. That is a live controversy, and this Court can settle it.

## II. Defendants' voluntary cessation cannot moot this case.

Defendants contend that this case is no longer justiciable because, after *Punxsutawney*, WCOs will be "***less*** likely" to violate Tim's Fourth Amendment rights. Doc. 58 at 3–4. Although Defendants originally framed this as a standing argument, it is really an argument about voluntary cessation. *See, e.g.*, *Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) ("Standing ensures that each plaintiff has the requisite personal interest at the commencement of the litigation, while mootness ensures that this interest continues

throughout the duration of the case." (cleaned up)). Under longstanding mootness principles, Defendants' argument lacks merit.

Just two years ago, the Supreme Court reaffirmed that proving mootness through voluntary cessation is a tall task. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (citing *Friends of the Earth*, 528 U.S. at 190)). Courts are "particularly skeptical of" these arguments, *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020), because they do not want defendants to "suspend [their] challenged conduct after being sued, win dismissal, and later pick up where [they] left off," *Fikre*, 601 U.S. at 241. At bottom, "the 'defendant claiming that its voluntary compliance moots a case bears the *formidable burden* of showing that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Road-Con*, 120 F.4th at 357 (quoting *Friends of the Earth*, 528 U.S. at 190).

The principles of voluntary cessation "apply even when the defendant's cessation is not entirely voluntary"—like when an intervening ruling from another court could influence a defendant's future conduct. *Hartnett*, 963 F.3d at 306; *see also Road-Con*, 120 F.4th at 357 (denying mootness argument made by government after relevant Supreme Court decision). On this point, *Road-Con* is particularly instructive. There, the City of Philadelphia argued that a First Amendment lawsuit against it was moot after the Supreme Court issued a decision that overlapped with

the merits of the case. *Road-Con*, 120 F.4th at 357. Rather than offer concrete evidence to show that its conduct would not recur, however, the city attempted to carry its "formidable burden" of proving mootness "by noting that it [was] *unlikely* to return to" its prior, challenged conduct after the Court's decision. *Id.* (emphasis added).

The Third Circuit didn't buy it. As the court explained, a defendant may not moot a case after an intervening, related judicial opinion simply by saying that the likelihood of continued constitutional violations has decreased. *Id.* Nor may a defendant moot a case by merely representing that it will reevaluate its policies and change them later. *Id.* Instead, the defendant must offer real evidence that it is bound to respect the constitutional rights of the plaintiff moving forward. *Id.*; *see also, e.g.*, *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 n.2 (3d Cir. 2008) (case was not moot even after a city repealed a challenged ordinance because it "had no alternate procedures in place" to ensure that constitutional violations would not resume); *Fikre*, 601 U.S. at 243 (case was not moot where government claimed it was "unlikely" that the plaintiff would face similar constitutional violations in the future).

Defendants cannot prove "that it is *absolutely clear* that" illegal searches of Tim's curtilage "could not reasonably be expected to recur." *Friends of the Earth,*

528 U.S. at 190. Quite the opposite. *Punxsutawney* did not invalidate Section 901(a)(7), and Defendants are free to continue using that statute to search Tim's property unless this Court enjoins them from doing so. Neither Defendants nor the Pennsylvania legislature have taken *any* binding action (like repealing Section 901(a)(7) or adopting binding regulations to prohibit searches like Moon's) to ensure that Defendants respect Tim's Fourth Amendment rights moving forward. That—standing alone—is enough to show that this case is not moot. *See, e.g.*, *Road-Con*, 120 F.4th at 357; *Fikre*, 601 U.S. at 242–43.

The Commission's post-*Punxsutawney* statements underscore Tim's concerns. Just after *Punxsutawney* was decided, Commission Board Member John Mahn Jr. told a reporter that the decision "won't fundamentally change how our WCOs do their job." Deborah Weisberg, *Pennsylvania agencies coming to grips with open fields decision*, Outdoor News (Aug. 7, 2026). Mahn added that WCOs can still search private property without a warrant whenever they observe a crime being committed. *Id.* But that's exactly what sparked this lawsuit. Moon entered Tim's protected curtilage twice after claiming to observe him violate the Commonwealth's fishing and boating laws—even though Tim was vindicated each time. Doc. 46-2 ¶¶ 128–30, 152; Doc. 46-23. As Tim has shown, those warrantless searches violated

the Fourth Amendment. Yet even after *Punxsutawney*, the Commission predicts that searches *just like* Moon's can and will recur.

Defendants' arguments before this Court also make matters worse. Defendants have not explained why it is "absolutely clear" that Tim will not suffer similar searches in the future. They do not even admit that the searches Tim suffered were unconstitutional. Defendants instead contend that, after *Punxsutawney*, no-trespassing signs will "deter WCOs" from conducting unconstitutional searches, meaning that WCOs will be "***less*** likely" to violate Tim's rights. Doc. 58 at 3–4 & n.3. The Commission also claims it will now "train[] and expect[]" WCOs "to avoid unreasonable searches of property posted with no-trespassing signs," though it does not explain how. *Id.* at 3.

These self-serving statements—made by counsel, without even a declaration from the Commission—are the exact arguments that the Third Circuit and the Supreme Court have rejected.[3] *Road-Con*, 120 F.4th at 357; *Fikre*, 601 U.S. at 243. Like Philadelphia in *Road-Con*, Defendants claim that an intervening decision by another court decreases the likelihood that they will continue to violate the

---

[3] A party cannot prove mootness by offering arguments with "no evidence whatsoever to support" them. *In re Price*, 370 F.3d 362, 366 (3d Cir. 2004). Thus, Defendants' self-serving voluntary cessation arguments—which are not backed by any admissible evidence—don't cut it.

Constitution. *See* 120 F.4th at 357. Like Philadelphia, Defendants claim that they will change their policies in the future, but they offer no evidence to support that claim. *See id.* And like Philadelphia, Defendants refuse to even admit that their conduct—and the policies that allow that conduct—are wrong. *Id.*

*Fikre* is similar: There, the United States submitted a wishy-washy declaration about its future intent and separately claimed it was "unlikely" that the plaintiff would be put back on the no-fly list in violation of his constitutional rights. *Fikre*, 601 U.S. at 243. But the government refused to (1) explain what would cause the plaintiff to be re-listed in the future, or (2) bind itself to keeping the plaintiff off the no-fly list for good. *Id.* at 242–43. The Supreme Court found that the government's "sparse declaration [fell] short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past."[4] *Id.* at 242. The

[4] As *Fikre* shows, courts routinely find that cases remain justiciable even when litigants introduce actual evidence to suggest mootness. *See* 601 U.S. at 242 (case was not moot even when government submitted declaration of future intent); *People Against Police Violence*, 520 F.3d at 231 n.2 (case was not moot even when challenged statute was repealed); *West Virginia v. B.P.J. ex rel. Jackson*, 146 S. Ct. 2356, 2373 n.3 (2026) (constitutional challenge to ban on transgender athletes playing in women's sports was not moot even though plaintiff declared that she would "cease playing women's sports in any context"). Here, Defendants offer no evidence at all. They merely repeat a different version of the "take our word for it, we don't plan to violate the Constitution anymore" argument that they have advanced throughout this litigation. Such representations fall far short of the absolute certainty required to moot this case. *See Friends of the Earth*, 528 U.S. at 190.

government's arguments about the likelihood of future violations fared no better. That's because the mootness inquiry ultimately turns on "the potential for a defendant's future conduct." *Id.* at 244. And if a defendant concedes that continued violations are possible, it becomes much more likely that its future conduct will bear that out. *See id.* Here, Defendants admit that searches like Moon's can recur, even if (like the defendants in *Road-Con* and *Fikre*) they characterize that possibility as unlikely. Doc. 58 at 3–4. An unlikely possibility is a possibility all the same, and it does not satisfy Defendants' heavy burden to prove that this case is moot.

At bottom, Defendants' voluntary cessation arguments fail because no change in the law forces Defendants to respect Tim's Fourth Amendment rights moving forward. Section 901(a)(7) is still on the books, and Commission policy still allows WCOs to conduct searches like Moon's. The only surefire way to moot this case would be for the Pennsylvania legislature to repeal Section 901(a)(7). Alternatively, this case *might* become moot if the Commission adopted binding policies forbidding WCOs from conducting searches like those at issue here. (It would depend on what the policies say.) But as things stand, nothing has changed. Tim's rights remain in jeopardy, and his case remains live.

## III. If anything, *Punxsutawney* reaffirms that it is the job of the courts—not the executive branch—to interpret statutes.

*Punxsutawney* does not moot Tim's lawsuit. It does, however, serve as a powerful reminder that courts must interpret statutes according to their plain text. Throughout this litigation, Defendants have repeatedly urged this Court to construe Section 901(a)(7) atextually to avoid holding that Defendants have used the statute to violate Tim's rights. *See* Doc. 13 at 3; Doc. 34 at 4; Doc. 48 at 9–10. Indeed, Defendants' top-line argument has been that the Pennsylvania Supreme Court cannot—as a matter of state law—strike down a statute like Section 901(a)(7). *See, e.g.*, Doc. 13 at 6 ("Mr. Thomas surely cannot deny that [the Pennsylvania Supreme Court] ***would*** render § 901(a)(7) constitutional."); Doc. 48 at 2 ("[T]he Pennsylvania Supreme Court would conclude that Section 901(a)(7) ***does not*** permit unconstitutional searches.").

But the Pennsylvania Supreme Court did just that in *Punxsutawney*. There, the court found that provisions of the Game and Wildlife Code "unquestionably permit" warrantless searches, 2026 WL 2111761, at *36, and explicitly refused to construe those provisions atextually when holding them facially unconstitutional, *id.* at *37 n.25. The case reaffirms that it is the job of the courts—not the executive branch—to interpret statutes according to their plain text and invalidate them when they are wielded unconstitutionally. This Court should do so here.

## CONCLUSION

For the reasons discussed above, this Court should rule that this case remains justiciable, deny Defendants' Motion for Summary Judgment (Doc. 47), grant Tim's Motion for Summary Judgment (Doc. 46), declare 30 Pa. C.S. § 901(a)(7) unconstitutional as applied to Tim, and enjoin Defendants from using Section 901(a)(7) to enter Tim's protected curtilage without a warrant in the future.

Respectfully submitted on August 28, 2026,

*/s/ Dylan Moore*
Dylan Moore*
DC 90032175
Kirby Thomas West*
PA 321371
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: dmoore@ij.org; kwest@ij.org

Douglas P. Thomas
PA 41930
THOMAS & PINNACOLI
345 Wyoming Ave., Ste. 200
Scranton, PA 18503
Tel: (570) 963-8880
Fax: (570) 963-9372
Email: dpthomas@tandplaw.com

**Admitted pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 4.2, I certify that true and correct copies of the foregoing Plaintiff's Supplemental Brief as to Mootness were served on the following individuals via the indicated means on August 28, 2026:

**VIA ECF**

Michelle A. Henry
Jacob Frasch
Nicole R. DiTomo
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
jfrasch@attorneygeneral.gov
*Counsel for Defendants*

*/s/ Dylan Moore*
Dylan Moore

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I certify that Plaintiff's Supplemental Brief as to Mootness, including all footnotes but excluding the Table of Contents and Table of Authorities, contains 3,473 words. In accordance with Local Rule 7.8(b)(2), counsel relied upon the word count feature of the word processing system to generate the total word count.

*/s/ Dylan Moore*
Dylan Moore